# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| METSO PAPER USA, INC., | |
| Plaintiff, | CIVIL ACTION NO. 3:08-CV-772 |
| v. | (JUDGE CAPUTO) |
| BOSTIK, INC., | |
| Defendant/Third-Party Plaintiff, | |
| v. | |
| SANDVIK, INC. | |
| and | |
| PENNSYLVANIA EXTRUDED TUBE COMPANY, | |
| Third-Party Defendants. | |

**MEMORANDUM**

Third-Party Defendants Sandvik, Inc. ("Sandvik") and Pennsylvania Extruded Tube Company ("PEXCO") move to dismiss Counts V and VII of the Second Amended Third-Party Complaint by Third-Party Plaintiff Bostik, Inc. ("Bostik"). (Doc. 6.)  Third-Party Defendants (collectively  the "Sandvik Entities") bring their motion under Federal Rule of Civil Procedure 12(b)(6), arguing that Bostik filed its claims outside the applicable statutes of limitations.  Because the statute of limitations does not bar Bostik's claim in Count V for negligence for off-site contamination and because the period of limitations is greater than two years under the Tank Act, the motion will be denied.

**BACKGROUND**

The facts as alleged in Bostik's Second Amended Third-Party Complaint are as follows:

Bostik is the owner of land in the Ivy Industrial Park (the "Bostik Property"), including a facility that manufactured adhesives between 1977 and 2003.  (Compl. ¶ 11, 12.)  Metso Paper USA, Inc. ("Metso") filed suit against Bostik alleging that Bostik is liable for costs that Metso incurred because of contamination in the Ivy Industrial Park.  (Compl. ¶ 1.)  Bostik then filed a third-party complaint against the Sandvik Entities, alleging that the facilities on the Sandvik land are the source of some or all of the contamination at issue in Metso's lawsuit.  (Compl. ¶ 3.) The Sandvik Entities also own land in the Ivy Industrial Park (the "Sandvik Property").  (Compl. ¶ 13.)   Sandvik operates a steel products manufacturing facility and PEXCO operates a steel tube manufacturing facility, both located on the Sandvik Property.

Between approximately 1971 and 1980, trichloroethylene (TCE) was used on the Sandvik Property. (Compl. ¶ 14-15.) Tetrachloroethylene (PCE) has also been used on the Sandvik Property. (Compl. ¶ 16.) TCE and PCE are both hazardous substances under the federal Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9601 *et seq.*, and Pennsylvania's Hazardous Sites Cleanup Act ("HSCA"), 35 P.S. § 6020.101 *et seq.*  (Compl. ¶ 17.)  TCE and PCE are also regulated substances under Pennsylvania's Storage Tank and Spill Prevention Act ("Tank Act"), 35 P.S. § 6021.101 *et seq.* (Compl.    ¶ 17.)  Trichloroethane, another hazardous and regulated substance, has also been used on the Sandvik property.  (Compl. ¶ 19.)

Sandvik issued a Site Characterization Report concluding that there were several sources of contamination on the Sandvik Property, including several aboveground storage tanks that released substances regulated under the Tank Act.  (Compl. ¶ 21-22.)  In December 2005 and February 2007, Sandvik entered into Consent Orders with the Commonwealth of Pennsylvania Department of Environmental Protection ("PADEP").  (Compl. ¶ 31-32.)  These orders, among other things, required Sandvik to investigate releases of hazardous substances on and off the Sandvik Property and monitor certain residential well treatment systems.  (Compl. ¶ 31-32.)

Some of the TCE and PCE released into the soil on the Sandvik Property has migrated into the groundwater in areas beyond the Sandvik Property, including the groundwater beneath the Bostik Property and the groundwater beneath Metso's property.  (Compl. ¶ 26, 28-30.)  All of the hazardous and regulated substances detected in the groundwater under the Bostik and Metso Properties are within 2500 feet of the perimeter of the site of the Sandvik storage tanks that released hazardous and regulated substances.  (Compl. ¶ 29-30.)  Bostik has not used TCE or TCA on the Bostik Property.  (Compl. ¶ 19.)

On April 23, 2008, Bostik entered into a Consent Order and Agreement with PADEP (the "Bostik Order") requiring Bostik to investigate the release of hazardous substances on and off the Bostik Property, sample off-site wells, and maintain and monitor carbon treatment systems in off-site private homes near the Ivy Industrial Park.  (Compl. ¶ 33.) The cost of responding to the Consent Order has been several million dollars, and Bostik expects to incur substantial additional costs from that Order and any other potential future orders from PADEP.  (Compl. ¶ 37.)  Metso seeks to recover in its lawsuit approximately $2 million dollars from Bostik.  (Compl. ¶ 39.)  Bostik anticipates that in the future, other

private plaintiffs may assert claims against it related to the contaminated groundwater. (Compl. ¶ 46.) Bostik thus seeks from the Third-Party Defendants "recovery of response costs, costs to resolve this and other lawsuits brought against Bostik, and other damages incurred by Bostik relating to groundwater contamination caused by one or more of the third-party defendants." (Compl. ¶ 4.)

Bostik filed its Third-Party Complaint against the Sandvik Entities on April 13, 2010. (Doc. 51.) It filed its Amended Third-Party Complaint on May 28, 2010 (Doc. 64), and then filed its Second Amended Third-Party Complaint on February 17, 2011. (Doc. 105.) The Sandvik Entities filed the present motion on February 25, 2011. (Doc. 107.)

The motion has been fully briefed and is ripe for disposition.

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element, *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). In light of Federal Rule of Civil Procedure 8(a)(2), the statement need only "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555).

In deciding a motion to dismiss, a court should consider the allegations in the complaint, exhibits attached to the complaint, and matters of public record. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Id.*

Generally, a party must plead affirmative defenses such as the statute of limitations in its answer to a complaint. *See* F.R.C.P. 12(b); *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002). But a party may assert the statute of limitations defense in a 12(b)(6) motion if the "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." *Robinson*, 313 F.3d at 135 (citing *Hanna v. U.S. Veterans' Admin. Hosp.*, 514 F.2d 1092, 1094 (3d Cir. 1975). A court may only dismiss a claim under 12(b)(6) where the bar is "apparent on the face of the complaint." *Robinson*, 313 F.3d at 135 (citing *Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 (3d Cir. 1978).

## **DISCUSSION**

The Sandvik Entities move to dismiss Count V and Count VII of Bostik's Second Amended Third-Party Complaint, arguing that the statute of limitations has run on the claims in each. Count V is a negligence claim and Count VII is a claim under the Tank Act. Bostik's Second Amended Third-Party Complaint contains the date of its alleged injury, and thus the Court must dismiss the complaint pursuant to 12(b)(6) if that date indicates that the claims are barred by their respective statutes of limitations.

**I.     Negligence Claim (Count V)**

Under Pennsylvania law, there is a two-year statute of limitations on all negligence claims. 42 P.S. § 5524 (2009). The statute of limitations for a negligence tort begins to run "when an injury is inflicted and the corresponding right to institute a suit for damages arises." *Gleason v. Borough of Moosic*, 15 A.3d 479, 484 (Pa. 2011) (citing *Wilson v. El-Daief*, 964 A.2d 354, 361 (Pa. 2009)). A party has a duty "to use all reasonable diligence to property inform him- or herself of the facts and circumstances upon which the right of recover is based." *Id.* (citing *Hayward v. Med. Ctr. of Beaver Cty.*, 608 A.2d 1040, 1042 (Pa. 1992)). The statute is not tolled simply due to a party's lack of knowledge, mistake, or misunderstanding. *Pocono Intern. Raceway, Inc. v. Pocono Produce, Inc.*, 468 A.2d 468, 471 (Pa.1983) (citing *Nesbitt v. Erie Coach Co.,* 204 A.2d 473 (Pa. 1964), *Bell v. Brady,* 31 A.2d 547 (Pa. 1943)).

The Sandvik Entities argue that the Bostik Order indicates that Bostik knew of its injury in July 2006, when Bostik detected TCE and PCE in its wells. If this is when Bostik knew or should have known of its injury, its April 13, 2010 filing of the Third-Party Complaint fell beyond the two-year statute of limitations. Bostik, on the other hand, argues that it was not aware of its injury until May 25, 2007 at the earliest, when PADEP issued an administrative order to Bostik requiring Bostik to investigation off-site contamination. Based on this date, Bostik would have been able to file until May 2009. That date was extended, however, by a written agreement between Bostik and the Sandvik Entities to toll the statute of limitations on any claims arising from the contamination.[1] *See* Opp. Br. Ex. A. Because

---

[1] The Sandvik Entities do not dispute the validity of the tolling agreement. But the tolling agreement is not applicable to the negligence claim if the injury occurred in May

that agreement lasted approximately thirteen months (between April 14, 2009 and May 9, 2010), Opp. Br. Ex. A at 4-10, the statute of limitations actually expired in June of 2010. Therefore, Bostik argues that its negligence claim was timely filed.

At the heart of the parties' dispute about the statute of limitations is a basic disagreement over how to characterize the injury giving rise to Bostik's cause of action. The Sandvik Entities argue that Bostik's Complaint seeks recovery for damages to the Bostik Property. Under this theory, as soon as Bostik was aware of contamination to its property, the cause of action accrued and the statute of limitations began to run. Bostik, however, asserts that its Complaint only seeks to recover for the losses it suffered on account of PADEP's holding Bostik financially liable for *off-site* contamination that Bostik argues was caused by the Sandvik Entities (as well as the losses Bostik will suffer in any lawsuits relating to off-site contamination caused by the Sandvik entities). Thus, according to Bostik, the relevant injury is not the groundwater contamination of the Bostik Property, but rather PADEP requiring Bostik to take action in response to groundwater contamination existing outside of the Bostik Property.

In examining the language in Count V of Bostik's Third-Party Complaint, the Court finds support for both theories. Bostik refers to the Sandvik Entities contamination of groundwater "beneath the Bostik Property" and "under . . . the Bostik Property," which suggests a claim for damages to the Bostik Property. Compl. ¶ 78. But Count V also references damages "in and around the Ivy Industrial Park" and "beyond the Bostik Property." Compl. ¶ 78-79. These statements would be irrelevant and superfluous if Bostik

---

2006, as the Sandvik Entities assert, because the claim would have expired prior to the signing of the agreement.

7

merely sought recovery for its own property damages. Therefore, the Court adopts Bostik's interpretation of its claim, finding that Count V asserts a claim of negligence based on injuries arising out of *off-site* contamination (including its response to PADEP orders requiring monitoring or repair of off-site property and its resolution of any lawsuits involving damage to off-site property).[2]

Because of the tolling agreement, Bostik's claim of negligence was filed within the statute of limitations period. The Court will deny the Third-Party Defendants' motion to dismiss, but stresses that the statute of limitations bars Bostik from using Count V to assert any claim of negligence based on an injury to the Bostik Property (including its response to any PADEP orders requiring monitoring or repair of the Bostik Property).

## II. Tank Act Claim (Count VII)

The Tank Act is a Pennsylvania regulatory scheme dealing with land and water contamination resulting from the release of hazardous materials from storage tanks. 35 P.S. § 6021.102. Count VII of Bostik's Third-Party Complaint asserts a claim under the Tank Act's citizen suit provision. 35 P.S. § 6021.1305.

The Sandvik Entities argue that the Court should dismiss Bostik's Tank Act claim because it was filed outside the statute of limitations period. The Sandvik Entities first assert that Bostik cannot sue under the Tank Act to recover costs for investigation and remediation activities off the Bostik Property because the Tank Act only provides a cause

---

[2] The Sandvik Entities argue in their Reply Brief that even under this theory of negligence, the Court must dismiss Bostik's claim because Bostik cannot show that the Sandvik Entities owed Bostik a duty of care regarding off-site contamination. But because the Sandvik Entities did not assert this ground for dismissal in either their Motion for Partial Dismissal or in their Brief in Support of the Motion for Partial Dismissal (and so Bostik did not have any opportunity to respond to this argument), the Court will not consider it.

of action for those who have suffered property damage or personal injury as a result of a storage tank contamination release. This would mean that Bostik's cause of action under the Tank Act would have accrued in July 2006, when it learned of the contamination on the Bostik Property. The Sandvik Entities further argue that private suits under the Tank Act are subject to the two-year statute of limitations for tort suits. As a result, they conclude that Bostik's Tank Act claim filed April 13, 2010 was barred by the statute of limitations.

The Court agrees with the Sandvik Entities' analysis of the coverage of the Tank Act's citizen suit provision. The Tank Act creates a private right of action allowing "any person having an interest which is or may be affected" to file a civil suit to "compel compliance" with the Act. 35 P.S. § 6021.1305. The statute does not clarify what constitutes an "interest" or what it means to "compel compliance," but Pennsylvania courts have interpreted the provision to cover suits to collect costs for cleanup and diminution in property value, *Centolanza v. Lehigh Valley Dairies, Inc.*, 658 A.2d 336, 407 (Pa. 1995), and suits for personal injury, *Wack v. Farmland Indust., Inc.*, 744 A.2d 265, 268 (Pa. Sup. 1999). The Court has found no precedent for a citizen suit under the Tank Act where a private party sued for cleanup costs relating to a third party's property, and thus determines that Bostik's Tank Act claim accrued in July 2006 upon Bostik's discovery of contamination on its own property.

The Sandvik Entities are incorrect, however, in their assessment of the applicable statute of limitations for Tank Act citizen suits. Under the Tank Act, government actions for civil and criminal penalties under the Act must be commenced within twenty years of the offense, *id.* § 6021.1314, but the Act does not specify a statute of limitations for private actions. Neither the Pennsylvania Supreme Court nor the Pennsylvania Superior Court has

ruled on the issue. The Sandvik Entities cite *Two Rivers Terminal, L.P. v. Chevron USA, Inc.*, 96 F. Supp. 2d 432, 440 (M.D. Pa. 2000), for the proposition that private Tank Act claims are essentially tort suits and should be governed by Pennsylvania's statute of limitation for torts. The *Two Rivers* approach has been rejected by the majority of courts that have considered the issue, however.[3]

Every Pennsylvania court determining the statute of limitations for a Tank Act citizen suit has determined that the limitations period is longer than two years. *See Mistick PBT v. Liss*, 57 Pa. D. & C.4th 233, 240 (Pa. Com. Pl. 2002) (applying six-year statute of limitations for Tank Act citizen suits); *Ziegler v. Lynn*, 33 Pa. D. & C.4th 143, 165 (Pa. Com. Pl. 1996) (twenty-year statute of limitations); *Buttzville Corp. v. Gulf Oil Corp.*, 25 Pa. D. & C.4th 172, 176 (Pa. Com. Pl. 1995) (twenty-year statute of limitations). In *Mistick PBT v. Liss*, the Allegheny County Court of Common Pleas determined that Tank Act claims are not necessarily torts. 57 Pa. D. & C.4th at 240. In some Tank Act cases, the *Mistick* court pointed out, a property owner has sued a remote prior owner for the diminution in value to the property resulting from the prior owner's violation of the Act. *Id.* at 237-40 (citing *Juanita Valley Bank v. Martin Oil Co.*, 736 A.2d 650 (Pa. Super. 1999)). Prior owners do not owe duties to future owners to prevent a diminution in value, *id.* at 240, and therefore this would be a valid Tank Act claim that is not in essence a tort, *id.* at 243. Therefore, the *Mistick* court applied Pennsylvania's six-year "catchall" limitations period. *Id.* at 240 (citing 42 Pa.C.S. § 5527). In *Buttzville Corp. v. Gulf Oil Corp.*, the Lancaster County Court of Common Pleas applied the twenty-year limitations period from section 1314 of the Tank Act

---

[3] The sole decision to follow *Two Rivers* and apply a two-year statute of limitations to Tank Act claims did so without discussion. *See Shooster v. Amoco Oil Co.*, No. C.A. 98-1627, 2001 WL 882971(E.D. Pa. Apr. 26, 2001).

to citizen suits.  25 Pa. D. &. C.4th at176.  The *Buttzville* court stressed that the Tank Act was a remedial statute, and the General Assembly intended for it to be "'liberally construed in order to fully protect the public health, welfare and safety of the residents of this Commonwealth.'"  *Id.* (quoting 35 P.S. § 6021.109).

In addition to the Pennsylvania cases rejecting the two-year statute of limitations, two federal cases have followed the same approach.  *See United States v. Sunoco, Inc.*, 644 F. Supp. 2d 566, 580-81 (E.D. Pa. 2009); *FSA Group, Inc. v. Amerada Hess Corp.*, No. 05-809, 2007 WL 1866767, at *10 (E.D. Pa. Jun. 28, 2007).  The Eastern District of Pennsylvania offered an exceedingly thorough analysis of the appropriate statute of limitations for a Tank Act citizen suit in *FSA Group, Inc. v. Amerada Hess Corp.*  2007 WL 1866767 at *3-10.  The *FSA Group* court noted that the Pennsylvania Supreme Court "unequivocally determined that 'a private action brought under the STSPA is no different than one brought by the Commonwealth.'"  *Id.* at 10 (quoting *Centolanza,* 658 A.2d 336, 341 (Pa. 1995)).  Based on this and the reasons outlined in *Mistick* and *Buttzville*, the court held that a twenty-year statute of limitations applies.

The Court need not determine whether the six- or twenty-year statute of limitations is correct, as Bostik's claim accrued in July 2006 and so would be timely filed under either limitations period.  Instead, the Court determines that there is very little support for the two-year statute of limitations and holds that it does not apply.  Therefore, the Sandvik Entities' motion to dismiss will be denied as to Count VII of the Third-Party Complaint.

## **CONCLUSION**

For the reasons stated above, Third-Party Defendant's motion to dismiss will be denied. An appropriate order follows.


July 8, 2011                                                                              /s/ A. Richard Caputo
Date                                                                                        A. Richard Caputo
                                                                                              United States District Judge

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| METSO PAPER USA, INC., | |
|    Plaintiff, | CIVIL ACTION NO. 3:08-CV-772 |
|       v. | (JUDGE CAPUTO) |
| BOSTIK, INC., | |
|    Defendant/Third-Party Plaintiff, | |
|       v. | |
| SANDVIK, INC. | |
|    and | |
| PENNSYLVANIA EXTRUDED TUBE COMPANY, | |
|    Third-Party Defendants. | |

## ORDER

**NOW**, this ___8th___ day of July, 2011, **IT IS HEREBY ORDERED** that Third-Party Defendants' Motion to Partially Dismiss (Doc. 107) is **DENIED.**

                                                    /s/ A. Richard Caputo
                                                    A. Richard Caputo
                                                    United States District Judge